IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Criminal Action No. 17-cr-00230-MSK

UNITED STATES OF AMERICA,

　　Plaintiff,

v.

ALEXANDER ISAIAH PEREZ,

　　Defendant.

## OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

**THIS MATTER** comes before the Court pursuant to Mr. Perez's Supplemental Motion for Compassionate Release **(# 94)**, and the Government's response **(# 95)**.[1]

In 2018, Mr. Perez pled guilty to one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). The Court sentenced him to a term of 240 months of imprisonment.

On August 5, 2020, Mr. Perez filed a *pro se* Motion for Compassionate Release **(# 88)** pursuant to 18 U.S.C. § 3582(c). That motion cited to the ongoing COVID-19 pandemic and Mr. Perez's concerns about his susceptibility to the virus, as well as more collateral concerns such has how the pandemic had delayed his anticipated transfer to a lower-security facility. The Court denied **(# 92)** that motion, finding that Mr. Perez did not demonstrate "extraordinary and compelling circumstances" as required by 18 U.S.C. § 3582(c) because Mr. Perez did not

---

[1] Also pending is Mr. Perez's Motion **(# 96)** requesting an update on the status of his substantive motion. Given the issuance of this Order, that motion regarding status is denied as moot.

1

demonstrate that he fell within any of the categories set forth in the commentary to §1B1.13 of the Sentencing Guidelines and because the Court found that re-evaluation of the 18 U.S.C. §3553(a) factors in light of the COVID-19 pandemic did not warrant Mr. Perez's release.

A few months later, Mr. Perez, this time with the assistance of counsel, filed the instant motion **(# 94)**, docketed as a "Supplemental Motion for Compassionate Release" and captioned as a "Motion to Reconsider" the Court's prior denial of Mr. Perez's *pro se* motion.  This new motion raised the following issues: (i) Mr. Perez's *pro se* motion was not intended to be a motion itself, but rather, was only intended to "memorialize his administrative request [the Warden of his facility] and signal to the Court his intent to file a Motion for Compassionate release" later if his request to the Warden was denied (which it eventually was); (ii) that the circumstances at Mr. Perez's facility at USP Marion have changed in the months since Mr. Perez's *pro se* motion, with a substantial COVID-19 outbreak underway at the time the instant motion was filed; (iii) that Mr. Perez needs substantial mental health treatment, but because of COVID-19-related lockdowns at his facility, he is "often . . . not receiving the critical mental health treatment he requires"; and (iv) because of Mr. Perez's mental health conditions, he should be considered immunocompromised and is at increased risk of contracting COVID-19 compared to other prisoners.

As an initial matter, the Government opposes Mr. Perez's motion on two procedural grounds.  First, the Government argues that Mr. Perez's motion, taking the form of a motion for reconsideration of the determination of his *pro se* motion, is untimely and unwarranted under Fed. R. Civ. P. 59(e).  The Court need not address this issue because the Court is prepared to consider Mr. Perez's current motion *de novo*, rather than as a motion seeking reconsideration of a prior ruling.

Second, the Government argues that Mr. Perez has failed to exhaust his administrative remedies by presenting the current arguments he raises to the Warden of his facility. 18 U.S.C. § 3583(c)(1)(A) provides that a defendant can apply to the court for compassionate release "after . . . the lapse of 30 days from the receipt of [a request for compassionate release] by the warden of the defendant's facility." The Government concedes that Mr. Perez made a request of his facility's Warden in conjunction with his initial *pro se* motion, but contends that the instant motion raises new arguments for release that were not presented in Mr. Perez's prior request to the Warden.

The degree of specificity with which a defendant must articulate the reasons for his or her request is the subject of some judicial discussion, *see e.g. U.S. v. Moreno*, 519 F.Supp.3d 937, 938-40 (D.Kan. 2021), but this Court finds that the record indicates that Mr. Perez sent the entirety of Docket # 88 to the Warden of his facility on or about July 30, 2020. *See* Docket # 88 at 2 (indicating that Mr. Perez sent a "notice and attached application" to both the Court and the Warden). Mr. Perez's current motion does not indicate that he has submitted any subsequent request to the Warden, but the Court finds that the issues he raises in his current motion are, in substantial part, duplicative or encompassed by the matters presented to the Warden on July 30, 2020. Thus, the Court finds that Mr. Perez has adequately exhausted this request and that the motion is properly before this Court. The Court then turns to the merits of that motion.

Although federal criminal sentences typically may not be altered once imposed, 18 U.S.C. § 3582(c)(1)(A) provides an exception if "extraordinary and compelling reasons warrant such a reduction." *U.S. v. Maumau,* 993 F.3d 821, 830-31 (10th Cir. 2021). To obtain relief under this statute, the defendant must show: (i) there are extraordinary and compelling reasons warranting a sentence reduction; (ii) the requested reduction is consistent with applicable policy

statements issued by the Sentencing Commission; and (iii) the requested reduction is consistent with the factors listed in 18 U.S.C. §3553(a). Id. at 831. In *Maumau*, as well as *U.S. v. McGee*, 992 F.3d 1035, 1045 (10th Cir. 2021), the Court of Appeals observed that the term "extraordinary and compelling circumstances" is not statutorily-defined and that "district courts [ ] have the authority to determine for themselves what constitutes" such circumstances. The Court of Appeals went on to state that such discretion is circumscribed by the Sentencing Commission's policy statements, but noted that the Commission's existing policy statement on the subject (found in commentary to Guideline § 1B1.13) is not applicable to motions such as this one, brought by a defendant and not by the Director of the Bureau of Prisons. *McGee*, 992 F.3d at 1050. Thus, it would appear that at present there are no policy statements from the Sentencing Commission that would "constrain district courts' discretion to consider whether any reasons are 'extraordinary and compelling.'" *Id.*

Some circumstances arising from the ongoing COVID-19 pandemic have been found to be "extraordinary and compelling" thereby justifying the granting of some compassionate release motions. But many of those motions were granted in the early stages of the pandemic when its scope and effect were not clear and there was no vaccine available. The present state of the pandemic is somewhat different due, in part, to the availability of vaccines that have been proven to be effective at reducing transmission rates and the severity of COVID-19 infections. Indeed, the CDC presently advises that fully-vaccinated individuals may "resume activities that you did prior to the pandemic" (although it still recommends the use of masks indoors). Reflecting this evolution, the 10th Circuit noted in *U.S. v. Hald*, 9 F.4th 932, 936 n. 2 (10th Cir. 2021), that there is "a growing consensus that either receiving or refusing COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances for purposes of

§3582(c)(1)(A)."

Mr. Perez's instant motion was filed before vaccines were being administered and neither party has supplemented his motion to address Mr. Perez's vaccination status. The Court finds that, generally, the Bureau of Prisons has been proactive in making vaccines available to inmates[2] and there is no reason to believe that, at this time, Mr. Perez has not been offered the opportunity to be vaccinated. Thus, it would appear that he either has been vaccinated or has refused the vaccine, either of which, as noted above, tend to cut against a finding of extraordinary and compelling circumstances justifying compassionate release.

In addition, Mr. Perez does not demonstrate any of the comorbidities that the CDC has identified as increasing the likelihood severe complications from contracting COVID-19. Mr. Perez's current motion offers a somewhat hypothetical argument that, generally speaking, individuals with depressed mental states can become immunocompromised, but Mr. Perez has not come forward with any evidence that medical providers have documented that he is personally considered to be immunocompromised. Thus, the Court finds that Mr. Perez's concerns about potentially contracting COVID-19 do not arise to an "extraordinary and compelling circumstance" justifying compassionate release under 18 U.S.C. § 3582(c).

Mr. Perez's instant motion also raises (or at least clarifies) an argument that the Court has not previously addressed - that COVID-19-related lockdowns have impaired Mr. Perez's ability to receive mental health counseling and treatment, and that deprivation itself constitutes an

---

[2] The Bureau Of Prisons provides online COVID-19 information, including some basic information about active infections and vaccination numbers at individual facilities. *See* https://www.bop.gov/coronavirus/index.jsp. As of this writing, Mr. Perez's current facility, FCI La Tuna, has completed 974 inmate vaccinations, in a facility that houses a total of 996 inmates. FCI La Tuna current reports 0 active inmate cases of COVID-19 at the present time, although it does report 4 active staff cases.

"extraordinary and compelling circumstance" warranting compassionate release under §3582(c). There is no question that Mr. Perez experiences an array of substantial mental health needs and that regular counseling is an important component of his rehabilitation. And the Court has no reason to doubt Mr. Perez's representation that, at the time of he filed the instant motion in November 2020, COVID-19-related facility adjustments might have reduced Mr. Perez's access to such services. But this argument requires currency, and the motion has not been supplemented to document that this is currently the case.[3] According to the BOP's website, Mr. Perez's current facility, FCI La Tuna, is one of five BOP facilities that are currently at a Level 2 operational status, one step down from the more restrictive Level 3 status found at most BOP facilities.[4] For purposes of mental health services, Level 2 status calls for capacity limitations only as necessary to "allow for social distancing during group activities." This suggests that Mr. Perez should be able to access individual (and group) mental health services at this time.

Even assuming Mr. Perez had demonstrated one or more "extraordinary and compelling circumstances" warranting further consideration under 18 U.S.C. § 3582(c), the Court would nevertheless find that Mr. Perez's release to home confinement would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a). Mr. Perez was sentenced to a lengthy custodial sentence and he has served only a small fraction of that time to date. At the time of sentencing, the Court

---

[3]   Even assuming the Court were to assess the merits of Mr. Perez's motion under the circumstances that existed at the time it was filed, it would not find that Mr. Perez would be entitled to compassionate release. Mr. Perez's motion seems to assume that Mr. Perez would have more access to mental health treatment if he were released to home confinement, but it offers no evidence to suggest that such external treatment was readily available to him. The Court can take judicial notice of the fact that medical providers of all types had substantially restricted their practices during the COVID-19 pandemic as well.

[4]   At the time of Mr. Perez's instant motion, he was housed at the more secure USP Marion facility, anticipating a transfer to the minimum-security FCI La Tuna. USP Marion remains at a Level 3 status.

noted that Mr. Perez "engaged in a pattern of activity involving prohibited sexual conduct" and that he "is characterized as a repeat and dangerous sex offender against minors." *Docket* # 78-1 at 4.  The Court explained that "the safest and sures way to protect the public is for Mr. Perez to be in prison [ ] where he will not encounter other children or have the opportunity to engage in the conduct with them that he did with the victim here." *Id.* at 9-10.  The Court rejected the suggestion that "the way to prevent his conduct outside of prison is through extensive therapy," explaining that "there is no guarantee that therapy works." *Id.* at 10.  Thus, it is clear that the Court found that the need to protect the public from further crimes by Mr. Perez was paramount in the sentencing decision.  18 U.S.C. § 3553(a)(2)(C); *see Docket* # 78-1 at 11 ("my primary concern at this juncture is protecting the public.  And the sure way to so that is through imprisonment").  Nothing in the record indicates that those concerns have abated since the time sentence was imposed.[5]

     Mr. Perez argues that prison is particularly difficult for a person with his characteristics – his age (in his 20's), a long sentence, his disposition, and various mental health difficulties (including periods of suicidal ideation). The Court appreciates those difficulties, and specifically considered them at the time sentence was imposed. As the Court explained at sentencing, "There is no doubt that prison will be difficult for Mr. Perez.  It may or may not be worse than for others."  Ultimately, the Court was not persuaded that the difficulties he would experience in prison were outweighed by concerns for public safety (particularly children).  There is nothing in the motion that suggests that Mr. Perez' situation is different now than it was when he was

---

[5]    Mr. Perez's motion indicates that "he is not receiving [ ] treatment while in custody. which may increase his risk of recidivism." The suggestion that Mr. Perez presents an <u>increased</u> risk of recidivism at this time merely bolsters the notion that continued incarceration, rather than release, is appropriate.

7

sentenced in 2018. Prolonged incarceration may not be the optimal way to provide treatment necessary to Mr. Perez's healing and rehabilitation, but release to home confinement would do even less to satisfy the full array of §3553(a) factors. It may be that Mr. Perez's transfer to a facility better suited to his mental health needs is the best path to rehabilitation while still protecting society, but that is a decision to be made by the BOP, not this Court. Accordingly, the Court finds that Mr. Perez's request for compassionate release would not satisfy the 18 U.S.C. § 3553(a) factors.

For the foregoing reasons, Mr. Perez's Supplemental Motion For Compassionate Release **(# 94)** is **DENIED**. Mr. Perez's motion **(# 96)** seeking an update on his status is **DENIED AS MOOT**.

Dated this 8th day of October, 2021.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
Senior United States District Judge